IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-00121-01-CR-W-HFS |
| | ) | |
| RANDY WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Randy White's Motion to Suppress Evidence (Doc. #43). For the reasons set forth below, it is recommended that this motion be denied.

## I. INTRODUCTION

On May 1, 2018, the Grand Jury returned a one-count Indictment against defendant Randy White. On July 17, 2019, the Grand Jury returned a one-count Superseding Indictment against defendant White. On December 10, 2019, the Grand Jury returned a one-count Second Superseding Indictment against defendant White. The Second Superseding Indictment charges the defendant with being a felon in possession of a firearm.

On December 11, 2019, an evidentiary hearing was held on the defendant's motion to suppress. Defendant White was represented by retained counsel John P. O'Connor. The Government was represented by Assistant United States Attorney Jeffrey Q. McCarther. The Government called Officer Elizabeth Garza of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On December 9, 2017, at approximately 1:27 a.m., Officer Elizabeth Garza was dispatched to the area of Swope Parkway and Benton Boulevard on a traffic accident call. (Tr. at 9-10; Gov. Exh. 3A at 1.) When Officer Garza arrived at the scene, medics and a fire truck were already present. (Tr. at 10.) Officer Garza observed a red truck that was wrecked on the side of the road. (Tr. at 10, 11.)

2. Officer Garza walked up to the scene and spoke with the driver of the truck. (Tr. at 10; Gov. Exh. 3A at 1.) Officer Garza asked the driver what had happened. (Tr. at 10; Gov. Exh. 3A at 1.) The driver told the officer that a vehicle in front of him hit its brakes and caused him to somehow wreck. (Tr. at 11; Gov. Exh. 3A at 1-2.) Officer Garza testified that she told the driver that he must have been riding the other vehicle too close. (Tr. at 11; Gov. Exh. 3A at 2.) Officer Garza testified that the driver told her the truck belonged to him. (Tr. at 14.) The driver was the only person in the truck. (Tr. at 14.) Officer Garza obtained the driver's identification and insurance card. (Tr. at 11; Gov. Exh. 3A at 2.) The driver said his name was Jahi Sadiki. (Tr. at 13; Gov. Exh. 3A at 3.) The ID and insurance card were in the name of Jahi Sadiki. (Tr. at 13.)

3. Officer Garza testified that the driver was taken to the ambulance to be checked out. (Tr. at 11; Gov. Exh. 3A at 2-3.) Officer Garza continued her conversation with the driver at the ambulance. (Tr. at 11; Gov. Exh. 3A at 3.) Officer Garza testified that she asked the driver what his plans were with respect to a tow. (Tr. at 11.) Officer Garza asked the driver if he wanted a non-preference tow. (Tr. at 15; Gov. Exh. 3 at 1:33:39; Gov. Exh. 3A at 3.) No response by the driver to Officer Garza's question was picked up on the audio recording. (Gov. Exh. 3 at 1:33:41.) A non-preference tow is "[a] tow service ordered by a department member at the request of a citizen when the citizen has no tow service company preference." (Tr. at 16-17; Gov. Exh. 19 at 2.) Officer Garza testified that a non-preference tow would be an arrangement between the citizen and the tow company as to "what's going to happen, financially and everything." (Tr. at 15.) When a non-preference tow is arranged, officers do not inventory the vehicle because it involves a private citizen and a private company engaging in a contract. (Tr. at 15-17.)

4. The Kansas City, Missouri Police Department tow policy provides the following with respect to a Vehicular Accident Tow: "If the vehicle operator is injured, unable, or unwilling to request a specific tow company, members will request a **City Tow** through the automated dispatch towing system and complete the Form 36 P.D." (Gov. Exh. 19 at A-8; emphasis in original.) Because the driver was unable to advise Officer Garza whether he wanted a specific tow company or a non-preference tow, Officer Garza asked the driver if he was okay with the truck being towed to the city car lot. (Tr. at 15,

2

22; Gov. Exh. 3 at 1:35:05; Gov. Exh. 3A at 4.) The driver agreed that the truck could be towed to the city car lot. (Tr. at 15; Gov. Exh. 3 at 1:35:06; Gov. Exh. 3A at 4.) If an officer makes the arrangements for a tow to the Kansas City tow lot, the officer is required to take an accounting of what is inside the vehicle. (Tr. at 16.) Officer Garza testified that the purpose of an inventory for a city tow is to account for items of value in a vehicle. (Tr. at 17.) It is a liability issue. (Tr. at 17.) Officer Garza testified that performing an inventory for a city tow has nothing to do with investigating a crime or searching for evidence of a crime. (Tr. at 18.) Officer Garza requested from dispatch a case report number for an injury accident so that she could prepare a report. (Tr. at 19; Gov. Exh. 3A at 5.) If Officer Garza were opening up an investigation of a crime, she would not have asked for a number for an injury accident. (Tr. at 19.) Officer Garza used the case report number for the injury accident provided by dispatch on the tow form. (Tr. at 19-20; Gov. Exh. 20.) The tow form states that the vehicle is being towed in regard to an injury accident. (Tr. at 20-21; Gov. Exh. 20.)

5. The driver was transported by ambulance to Research Medical Center. (Tr. at 14-15; Gov. Exh. 3A at 4, 5, 8.)

6. The printer in Officer Garza's patrol car was not working. (Tr. at 18.) Officer Garza requested another car to the scene so that she could process the injury accident. (Tr. at 18.) While conducting the content inventory of the truck prior to tow, Officer Garza recovered a Smith & Wesson .32-caliber revolver from the center console of the wrecked truck.[1] (Tr. at 11, 23-24; Gov. Exh. 3A at 5.) Officer Garza testified that when officers come across a firearm in the course of conducting an inventory, they are not allowed to just leave the firearm in the vehicle. (Tr. at 24.) Officer Garza testified that she recovered the firearm for safekeeping in accordance with the Kansas City, Missouri Police Department's tow policy. (Tr. at 24; Gov. Exh. 19 at B-3.) The only other items of value that Officer Garza found in the truck were a few (less than five) tools. (Tr. at 24-25.) Officer Garza testified that she is not a tool expert, so she could not specifically identify the tools. (Tr. at 24-25.) The Kansas City, Missouri Police Department's tow policy provides that "**Property of negligible value** will be inventoried and listed on the Form 36 P.D." (Gov. Exh. 19 at B-4; emphasis in original.) Officer Garza listed miscellaneous tools and gun on the inventory sheet. (Tr. at 25; Gov. Exh. 20.) Officer Garza testified that there was nothing else of even negligible value in the truck. (Tr. at 25-26.) Officer Garza described seeing a jewelry box, but there was no jewelry in the box. (Tr. at 28, 54.) Officer Garza testified that there were also a half empty Windex bottle, some porn videos, a half empty bottle of anti-freeze, an air freshener, a cassette tape, and two mismatching gloves in the vehicle, but that she did not find any of these items to have even negligible value. (Tr. at 26-28.) The windows of the vehicle were broken out and the interior of the vehicle was littered with broken glass. (Tr. at 27-28, 55; Gov. Exh. 12, 13.) According to Officer Garza, the truck contained just mostly trash. (Tr. at 26.)

---

[1] Based on the video from Officer Garza's dashcam, it appears that Officer Garza conducted the inventory search from approximately 1:46 to 1:51 a.m. (Gov. Exh. 3.) Officer Garza can be heard stating she found a gun at 1:48:36. (Gov. Exh. 3.)

3

7. Officer Garza testified that when a firearm is involved, it is standard police protocol to check for prior felony convictions or whether the person who had the firearm is a prohibited person. (Tr. at 29-30.) An assisting officer ran the driver's name and discovered that he was a felon. (Gov. Exh. 3A at 5, 7-8.) Officer Garza called Detective Rice, a detective working nights for the general squad, to confirm that the driver was a felon and to get instructions on what to do next. (Tr. at 32-33; Gov. Exh. 3A at 8.) Detective Rice confirmed that the driver was a felon and advised that the driver's name was Randy White. (Tr. at 14; Gov. Exh. 3A at 8.) Apparently, Randy White had changed his name to Jahi Sadiki. (Tr. at 61.) Detective Rice instructed Officer Garza to contact Detective Rorabaugh at the Violent Offender Squad. (Tr. at 33-34; Gov. Exh. 3A at 8.) Detective Rorabaugh approved a 24-hour investigation hold for White. (Tr. at 34.) Up until that point, White was not under arrest for anything. (Tr. at 35.)

8. Officer Garza issued defendant White a ticket for following too close. (Tr. at 11; Gov. Exh. 3A at 9.)

9. Officer Garza testified that she had never met nor heard of Randy White (or Jahi Sadiki) prior to being dispatched to this accident. (Tr. at 13-14.) Officer Garza had no suspicion that White (Sadiki) had committed a crime when she arrived at the accident scene. (Tr. at 14.) Officer Garza testified that she was not targeting White (Sadiki) in any way. (Tr. at 33.)

10. The tow truck driver took photographs of the vehicle before he towed it. (Tr. at 31.) These photographs were marked and admitted as Government Exhibits 4 through 13. (Tr. at 31.) Officer Garza testified that every time that she has ordered a tow, the tow truck driver has taken photographs of the exteriors and interiors of the vehicles. (Tr. at 31.) Officer Garza testified that she knew the tow truck driver would take these photographs because it is standard protocol for all tow truck drivers towing vehicles from a scene to take photographs. (Tr. at 32.)

11. Officer Garza took the firearm to the Metro Patrol Station. (Tr. at 36.) Officer Garza photographed the firearm and the six rounds of ammunition which were recovered from the firearm. (Tr. at 36-37; Gov. Exh. 14-18.)

### III. DISCUSSION

Defendant White seeks to suppress all evidence collected and obtained as a result of the search conducted of his motor vehicle. (White Mot. to Suppress Evidence at 1; Doc. #43.) According to defendant White, the search cannot be justified as an inventory search because the inventory log prepared by Officer Garza did not comply with department policy and revealed that Officer Garza was searching only for incriminating evidence. (*Id.* at 5.)

4

As set forth by the United States Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364 (1976):

> In the interests of public safety and as part of what the Court has called "community caretaking functions," . . . automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic . . ., disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. . . . The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*Id.* at 368-69 (citation omitted). "The inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." *United States v. Garreau*, 658 F.3d 854, 857 (8th Cir. 2011). An inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987). In *United States v. Harris*, 795 F.3d 820, 822 (8th Cir. 2015), the court advised that "when police are conducting 'inventory searches according to such standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime.'" (quoting *United States v. Marshall*, 986 F.2d 1171, 1176 (8th Cir. 1993)).

In the instant case, defendant White was involved in an injury accident and was being taken by ambulance to the hospital. (Fact Nos. 2, 5.) There was no one present to take custody of defendant White's vehicle and defendant White did not respond to Officer Garza's inquiry about a private tow. (Fact No. 2, 3.) The Kansas City, Missouri Police Department tow policy provides that if a vehicle operator is injured, unable, or unwilling to request a specific

5

tow company, members will request a city tow. (Fact No. 4.) Defendant White agreed that Officer Garza should arrange to have his vehicle towed to the city tow lot. (*Id.*) If an officer makes the arrangements for a tow to the Kansas City tow lot, the officer is required to take an accounting of what is inside the vehicle. (*Id.*) Officer Garza discovered a firearm in the center console of the vehicle while performing the inventory search. (Fact No. 6.) Officer Garza recovered the firearm for safekeeping in accordance with the Kansas City, Missouri Police Department's tow policy. (*Id.*) Officer Garza testified that the only other items of value that she found in the vehicle were a few tools. (*Id.*) According to Officer Garza, there was nothing else of even negligible value in the truck. (*Id.*) Officer Garza listed miscellaneous tools and gun on the inventory sheet. (*Id.*)

The Court finds that Officer Garza made the decision to tow defendant White's vehicle because White was being transported to the hospital and Officer Garza had no other viable alternative to having the vehicle towed. The Court further finds that the inventory search of the vehicle was conducted pursuant to standardized police procedures and that it was not done in bad faith or for the sole purpose of investigation. In fact, there was no evidence presented to suggest that Officer Garza performed the inventory search with any purpose of investigation. Officer Garza was clearly performing a community caretaking function. Even if the listing of "miscellaneous tools"[2] rather than specifically identifying the tools in the inventory is a deviation from procedure, which the Court does not necessarily find, this deviation does not warrant the

---

[2] In his motion to suppress, defendant White argues that he had "numerous tools including screwdrivers and clamps." (White Mot. to Suppress Evidence at 4; Doc. #43.) Officer Garza testified that there were a few (less than five) tools. (Fact No. 6.) There was no evidence presented at the hearing to contradict Officer Garza's testimony.

suppression of evidence.[3]  In *United States v. Williams*, 777 F.3d 1013, 1016 (8th Cir. 2015), the defendant argued that "the police officers' failure to inventory all of the loose items of minimal value in the car was a violation of procedure and rendered the search invalid."  The court found:

> "[C]ompliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's caretaking function.  This does not mean that inventory searches are always unreasonable when standard procedures are not followed."  *United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998)(internal citation omitted).  Unless a minor deviation from procedure supports an argument that the inventory search was merely a pretext for looking for evidence, the search will be deemed valid.

*Williams*, 777 F.3d at 1016.  *See also United States v Garreau*, 658 F.3d 854, 858 (8th Cir. 2011)(officer's alleged minor deviation from the policy was not sufficient to render the search unlawful).  No evidence has been presented to suggest an improper motive for the search of defendant White's vehicle.  Thus, there is no constitutional violation.

Defendant White also makes a fruit of the poisonous tree argument.  (White Mot. to Suppress Evidence at 5-6; Doc. #43; Tr. at 71.)  Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and verbal evidence obtained directly or indirectly through the exploitation of police illegality.  *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).  The Court finds that the actions of the police were lawful.  Therefore, defendant's fruit of the poisonous tree argument must fail.

---

[3]In his motion to suppress, defendant White also argues that he had numerous pieces of jewelry of unquestionable monetary value as well as cleaning products in his vehicle that were not listed on the inventory sheet.  (White Mot. to Suppress Evidence at 4; Doc. #43.)  Officer Garza testified that there was an empty jewelry box in the vehicle.  (Fact No. 6.)  As for cleaning products, Officer Garza testified that there was a half empty Windex bottle.  (Fact No. 6.)  There was no evidence presented at the hearing to contradict Officer Garza's testimony.

7

Case 4:18-cr-00121-BP   Document 61   Filed 02/05/20   Page 7 of 8

## IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant White's Motion to Suppress Evidence (Doc. #43).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Lajuana M. Counts*
Lajuana M. Counts
United States Magistrate Judge